HENDRA v. DEPARTMENT OF PUBLIC INSTRUCTION.

Workmen's Compensation—Accident—Proximate Cause—Heart Attack—Death—Evidence.

> Finding of workmen's compensation commission that plaintiffs' decedent, a field agent for the vocational rehabilitation division of the department of public instruction, had sustained an accident which arose out of and in the course of his employment *held*, sustained by evidence showing he had had a series of heart attacks following the repeated making of strenuous efforts to extract his car from snowbanks while engaged in travel on his work and which finally resulted in his death about 11 months later.

Appeal from Workmen's Compensation Commission. Submitted October 3, 1956. (Docket No. 24, Calendar No. 46,407.) Decided February 28, 1957.

Dagmar Hendra and Richard I. Hendra, widow and son of Roy I. Hendra, presented their claim for compensation against State of Michigan, Department of Public Instruction, Vocational Rehabilitation Division, employer, and State Accident Fund, insurer, for their decedent's death following heart attack. Award to plaintiffs. Defendants appeal. Affirmed.

*Warner & Hart,* for plaintiffs.

*Harry F. Briggs* (*Stanley Dodge,* of counsel), for defendants.

---

References for Points in Headnotes
[1] 58 Am Jur, Workmen's Compensation § 209 *et seq.*

SHARPE, J.  Upon leave being granted defendants appeal from an award of compensation in favor of plaintiffs.  The essential facts are not in dispute, however the inferences and conclusions to be drawn from such facts present the 2 questions for discussion and decision.

Roy I. Hendra was employed as a field agent by the vocational rehabilitation division of the Michigan department of public instruction.  His duties required him to travel in 3 counties in the Upper Peninsula, calling upon and assisting disabled persons.  On December 17, 1951, he was given an assignment which involved a 3-day trip to the copper country.  He left his office in Marquette and drove to Houghton where he spent some time supervising a training program.  He then left for Laurium. As he approached Laurium it began to snow.  In coming into Laurium he traveled up hill, and because of the severe snow storm and attempting to pass another car coming in the opposite direction his car went into a ditch and snowbank.  He finally got the car out of the ditch by strenuous efforts of shoveling snow and by pushing the car.  He then drove to Laurium where he transacted some business.  He then drove to Hancock where he ordered dinner at a restaurant, but was unable to complete his meal because he felt sick and exhausted.  He then attempted to drive to his rooming house in Houghton.  He again had trouble with his car, resulting in his again pushing the car.  The car again went into a bank of snow and Hendra walked about 3 blocks to a gasoline station where he secured the services of a wrecker.  He stayed all night in Houghton.  He went to bed and awoke about 7 a.m.  On awakening he felt ill and exhausted.  He was unable to eat any breakfast and decided to return to his home in Marquette.  When nearing Alberta he felt sick but drove on to Ishpeming where he was hos-

pitalized. His condition was diagnosed as heart trouble. He was kept in the hospital for 6 weeks and was then taken home. He returned to work on a half-time schedule on March 17, 1952. He resumed a full-time schedule on April 4, 1952. He filed a claim for compensation, but on May 14, 1952, he suffered another heart attack. On October 8, 1952, the deputy commissioner entered an award finding that Roy I. Hendra had received a personal injury on December 17, 1951, and awarded compensation for lost time and reimbursement for medical and hospital expenses. On November 15, 1952, Hendra and his 16-year-old son Richard made a trip to Conway lake to a deer camp. The first day in camp Hendra prepared the meals and went for a walk along the shores of Lake Superior. The next morning Hendra and his son paddled a canoe around Conway lake, with the son doing most of the paddling. They returned to camp, and at 11:15 a.m. Hendra went out alone in the canoe to do some pike fishing. About a half hour later the canoe was discovered floating upright and filled with water. Hendra's body was found a few days later, close to the camp and in 4 or 5 feet of water and 100 feet from the shore. The canoe was also found close to the shore and in shallow water.

On December 10, 1952, an application for hearing and adjustment of claim was filed on behalf of the widow and minor son. On June 30, 1953, the deputy commissioner entered an award finding that Hendra received a personal injury arising out of and in the course of his employment on December 17, 1951, from which he died on November 16, 1952. The cause was appealed to the workmen's compensation commission and they affirmed and modified the award.

Defendants appeal and urge that Hendra did not suffer an accidental and personal injury which arose

out of and in the course of his employment on December 17, 1951, which aggravated a pre-existing heart condition. The commission made the following finding of facts on this issue:

"Hendra was in excellent physical condition prior to the injury in question. He did not have heart disease. His family physician, Dr. W. L. Casler, who had known him for 10 years, treated him for 'flu' or grippe in October, 1951, examined his heart, and found it normal. Dr. Casler testified that Hendra had 'absolutely nothing' wrong with his heart prior to December 17, 1951.

"Dr. C. P. Drury, who examined Hendra for the State troops in January, 1951, signified that he was physically able to enter the State troops and did not observe or hear anything wrong with his heart. Dr. Drury had known Hendra for 8 years and testified that he never found that Hendra showed any symptoms of any heart condition.

"The autopsy following his death indicated that Hendra may have had some arterial changes such as normally take place as a person grows older which may have developed over a period of years. However, this would not alter the result herein as it is clear that an accidental injury arising out of and in the course of employment is compensable whether the injury is the direct and sole cause of the ensuing condition or whether the injury aggravates a pre-existing diseased condition.   *   *   *

"When the automobile became lodged in the ditch and snowbank Hendra was badly frightened because of the position of the car and poor visibility. He feared that another car would smash into him. There was no chance to get help immediately. He shoveled snow vigorously but to no avail. He could not back the car out because the wheels spun. Hendra put his back against the car and tried to heave it out. He tried to push the car out facing it but fell to his knees several times. Hendra finally succeeded in putting the car back on the highway

by desperately pushing, heaving and lifting it, which constituted very unusual and strenuous exertion. This was not ordinary shoveling and pushing, but working against time on an emergency basis, under dangerous conditions. The personal injury which he sustained as a result of the incidents described was accidental in nature, developed out of unusual and fortuitous circumstances, and arose out of and in the course of his employment."

The record supports the facts as found by the commission, and we hold that under these facts Hendra suffered an accident on December 17, 1951, which arose out of and in the course of his employment.

Defendants also urge that if Hendra suffered an injury on the day in question it was not the proximate cause of his death on November 16, 1952. Plaintiffs urge that there was a relationship between the accident of December 17, 1951, and his death some 11 months later. The commission stated:

"The events of December 17, 1951, described above, were the direct cause of the serious heart damage which incapacitated Hendra and necessitated hospitalization on December 18, 1951, and which ultimately and directly resulted in his death through heart attack on November 16, 1952. The causal connection is clear and convincing. We do not have to speculate on the cause of death."

The conclusion of the commission is supported by the evidence of Dr. Casler who testified:

"A. My opinion is that from the electrocardiogram taken on December 20th, the cardiac accident definitely took place at the time that he overexerted himself pushing his automobile.  *  *  *

"A. No, I feel it is reasonable to draw the conclusion that inasmuch as Roy was a good boatsman, canoeman, a powerful swimmer, and that there wasn't a heavy wind on the lake, that he must have

had a heart attack to have caused him to fall overboard out of the canoe. When he had his attack in December he drove up in front of the Consolidated Fuel & Lumber Company office and was hanging over the car window gasping for breath. If such a thing had happened while he was in a canoe, we certainly can draw a very definite conclusion that it would capsize the canoe, and if this caused him to fall overboard, he probably was either semiconscious or unconscious. Otherwise he would have struggled to his feet and been able to walk ashore or swim ashore. * * *

"*A.* I can't conceive of his falling out of the canoe under the circumstances that I understand existed unless he did have an attack."

We are not unmindful of the fact that there is no direct evidence as to how Hendra came to his death, but there are strong inferences from established facts to support the finding of fact by the commission that Hendra had a heart attack on November 16, 1952, which resulted in his death.

The award is affirmed, with costs to plaintiffs.

DETHMERS, C. J., and SMITH, EDWARDS, KELLY, CARR, and BLACK, JJ., concurred.

VOELKER, J., took no part in the decision of this case.